## A03A0927. HARALSON COUNTY et al. v. LEE.
(589 SE2d 872)

Mikell, Judge.

Jimmy E. Lee claims that his shoulder replacement surgery is compensable under the Workers' Compensation Act, OCGA § 34-9-1 et seq. The Haralson County Board of Commissioners and the Association of County Commissioners of Georgia ("Haralson County") appeal from the superior court's order reversing the award of the appellate division of the State Board of Workers' Compensation ("Board"), which affirmed the administrative law judge's ("ALJ") award denying Lee's claim that Haralson County pay for his shoulder replacement surgery. The ALJ denied the claim finding that Lee sustained a new accident and injury and that any aggravation of Lee's pre-existing condition amounted to a new injury. Haralson County contends that the superior court failed to apply the "any evidence" standard of review. We granted Haralson County's application for discretionary appeal, and we reverse.

Construed in a light most favorable to Haralson County, as the party prevailing before the Board, the evidence is as follows. Lee began having problems with his left shoulder in 1982. He began working for Haralson County in 1989 as the chief appraiser and sustained a compensable on-the-job injury on June 3, 1993, when he reached down to open a desk drawer and felt a pop in his left shoulder. Lee received authorized treatment from Dr. Ralph Fleck.

Lee was terminated from his employment with Haralson County on January 11, 1994, for reasons unrelated to his on-the-job accident and injury. Subsequently, Lee began working full-time for his own business, Jimmy Lee Construction Company, which he had been operating on a part-time to full-time basis for approximately 30 years. Lee testified that, while he basically did supervisory work, he occasionally performed masonry work such as laying cinder blocks and bricks.

Lee continued to receive treatment from Fleck. On May 3, 1995, Fleck diagnosed arthritis and prescribed cortisone injections. Lee returned to Fleck on June 14, 1995, complaining of recurrent pain in his shoulder. Fleck administered a cortisone shot and noted that Lee "has still been working building houses." On January 25, 1996, Lee was holding a toolbox in his right hand and was either reaching for a level or lifting a level when he felt an excruciating pain in his left shoulder. On January 31, 1996, Fleck noted that Lee's pain continued. On February 21, 1996, Fleck noted that Lee was getting a degenerative shoulder condition. Fleck subsequently recommended that Lee undergo shoulder replacement surgery. On May 14, 2001, Lee filed a claim seeking the payment of medical bills and a determination of whether the shoulder replacement surgery recommended

by Fleck was compensable. Haralson County filed a notice to controvert, arguing that Lee sustained a new accident and injury on January 25, 1996.

At the hearing held on Lee's claim, Fleck testified that Lee's need for shoulder replacement surgery was due to the 1993 injury and probably due to some pre-existing problems in the shoulder. Fleck further testified that in October 1994, he made a note saying that he did not feel Lee was a candidate for shoulder replacement surgery. Fleck also testified that he had written a letter in October 1996 indicating that the January 1996 incident was not a new injury, but an aggravation of a pre-existing condition. According to Fleck, Lee's work in construction aggravated the shoulder and probably caused it to be more painful. When asked whether the need for shoulder replacement surgery was a direct and proximate result of the June 1993 incident of reaching to pull open a desk drawer, Fleck testified that he did not think the June 1993 incident was a direct cause as Lee had a pre-existing problem which was "going to be there" even without that incident. Fleck believed that the June 1993 incident aggravated a pre-existing problem and caused it to be symptomatic and that the January 1996 incident was an aggravation of a preexisting condition.

Based upon this evidence, the ALJ concluded that Lee sustained a new injury to his shoulder on January 25, 1996, and that his employment after leaving Haralson County aggravated his preexisting shoulder problem. The ALJ further concluded that

> the need for a proposed shoulder replacement is the proximate result of the January 25, 1996[,] incident and the aggravation caused by Mr. Lee's construction work from 1994 through the present time. Therefore, Mr. Lee's . . . continued need for medical treatment, including surgery, [is] no longer a result of his on-the-job accident of June 1993.

The Board affirmed this award, concluding that the ALJ's findings were "supported by a preponderance of competent and credible evidence contained within the record on review."

The superior court, however, reversed the Board's award, finding no evidence to support the ALJ's finding of any "fictional new accident" causing injury on January 25, 1996. In support of its finding, the superior court concluded that the ALJ improperly impeached Lee's testimony in order to find a new accident. Lee testified that he was reaching for a level when he felt an excruciating pain, but Fleck's notes state that Lee was "lifting a level" when he suffered the excruciating pain. The superior court found that Lee's testimony could not be impeached because of the contradiction in Fleck's testimony which

was based upon his medical notes "which would have been, necessarily, hearsay in that Dr. Fleck was interpreting the entry in the office notes made by his P.A., Mr. Scrugg's [sic], on 1/25/96" about whether Lee was actually picking up a level or whether he simply went to reach for the level. Thus, the superior court concluded that Lee's credibility was not an issue for the ALJ to determine and based upon Lee's testimony, there was no evidence to support a finding of a new accident causing injury on January 25, 1996.

> In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board.

(Citations and punctuation omitted.) *Southwire Co. v. Molden*, 223 Ga. App. 389, 390 (477 SE2d 646) (1996), citing *South Ga. Timber Co. v. Petty*, 218 Ga. App. 497, 498 (462 SE2d 176) (1995), and *Young v. Columbus Consolidated Govt.*, 263 Ga. 172 (430 SE2d 7) (1993).

The superior court erred in its conclusion that the ALJ improperly impeached Lee's testimony in order to find a new accident. On the contrary, the ALJ's award does not find any contradiction between Lee's and Fleck's testimony. The ALJ found that "[o]n January 25, 1996[,] Mr. Lee was holding a tool box in his right hand and was reaching for a level when he felt excruciating pain in his left shoulder, which is the shoulder he had had problems with." There is nothing in this finding which makes a distinction between reaching for the level and actually picking up the level. Additionally, when asked by Haralson County if Lee's continued construction work aggravated his pre-existing shoulder problem, Fleck testified that such work would aggravate the problem and cause it to be more painful. The evidence provided by Lee himself, that he was reaching for the level, is sufficient to support the ALJ's finding of a new injury, particularly when combined with the aggravation caused by his construction work.

In support of its decision, the superior court relied on the following cases, all of which are distinguishable: *Carey Hilliard's Restaurants v. Cesaroni*, 179 Ga. App. 656 (347 SE2d 306) (1986); *Hampton v. Howard Baer, Inc.*, 172 Ga. App. 513 (323 SE2d 701) (1984); and *Slattery Assoc. v. Hufstetler*, 161 Ga. App. 389 (288 SE2d 654) (1982). In *Hampton*, this Court reversed the denial of workers' compensation benefits, finding no evidence to support the ALJ's finding that work

performed by the claimant/appellant for his subsequent employer was more strenuous than the work he had performed for his former employer/appellee. In that case, the claimant testified that his wrist had never improved since the original injury, that he had done nothing to reinjure his wrist, and that his present duties were less strenuous than his former duties with appellee.

In *Cesaroni*, the Board determined that the claimant/appellee had suffered a new injury for which the claimant's former employer/appellant was not liable. The superior court reversed and remanded. On appeal, this Court affirmed the superior court's finding that there was no evidence to support the ALJ's finding that the claimant's injury resulted from an aggravation of his prior condition by his activities on a new job. In that case, the appellant posed several hypothetical questions to a physician, who conceded that if conditions were as set out in the hypothetical questions, it would be possible that the claimant's condition resulted from an aggravation of his former condition equivalent to a new injury. But, the record did not contain the facts on which the hypothetical questions were based. Therefore, there was no evidence on which the Board could have based its opinion. The superior court in *Cesaroni* correctly reversed the Board. In the case at bar, the claimant's testimony and lengthy medical record furnish some evidence in support of the Board's decision.

Similarly, in *Slattery*, we affirmed the superior court's decision affirming the ALJ's finding that the claimant/appellee was entitled to benefits from his former employer/appellant because he had suffered a change in condition rather than a new injury. In that case, there was evidence that the claimant's duties at his new job were not as strenuous as those previously performed for the appellant and the claimant did not suffer an actual new injury. By contrast, in the case at bar, it is reasonable to infer that the claimant's duties at his new job in the construction industry, occasionally laying cinder block and brick, were at least as strenuous as his previous desk job as chief appraiser for Haralson County.

Unlike *Cesaroni*, where we did not find any evidence to support the ALJ's finding, here, there is at least a scintilla of evidence to support a finding that Lee's employment subsequent to leaving Haralson County aggravated his pre-existing shoulder problem. Accordingly, the ALJ and the Board were authorized to conclude that Lee sustained a new accident and injury and that any aggravation of Lee's pre-existing condition amounted to a new injury, thus relieving Haralson County of any obligation to pay for shoulder replacement surgery. The superior court therefore erred in reversing the decision of the ALJ and the Board.

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 12, 2003.

*Drew, Eckl & Farnham, David A. Smith,* for appellants.
*Mundy & Gammage, Miles L. Gammage,* for appellee.