A12A0580. HARRIS v. EASTMAN YOUTH DEVELOPMENT
CENTER.
(727 SE2d 254)

DILLARD, Judge.

Sara C. Harris appeals the denial of her request to designate her workers' compensation injury as catastrophic pursuant to OCGA § 34-9-200.1 (g) (6) (A).[1] She contends that the administrative law judge ("ALJ") erred by (1) determining that her low-back pain was not compensable when that issue was not before the ALJ and (2) determining that her claim was not catastrophic in nature. Because we agree that the ALJ erred by making a determination as to the compensability of Harris's low-back pain, we vacate the ALJ's order and remand with direction.

The record reflects that in June 2002, Harris was employed as a cook at the Eastman Youth Development Center when she was kicked in the left knee by a resident. Although the injury initially kept her out for six weeks, Harris eventually returned to work on light duty. But approximately four to five months later, the pain in her knee worsened, and she developed low-back pain. The treating physician determined that Harris's low-back pain was related to the alteration of her gait as a result of the knee injury. Thus, Harris stopped working in April 2003 and underwent two procedures to her knee, but the

---

[1] See OCGA § 34-9-200.1 (g) (6) (A) ("'Catastrophic injury' means any injury which . . . prevents the employee from being able to perform his or her prior work and any work available in substantial numbers within the national economy for which such employee is otherwise qualified . . . .").

treating physician ultimately recommended a total knee replacement and hoped that the surgery would alleviate the pain in Harris's knee and back.

Harris requested that the appellee cover the recommended total knee replacement. But in November 2006, the ALJ denied Harris's request and suggested that the parties first enter into an agreement as to a weight-loss program for Harris, who is obese. Nevertheless, the ALJ also found that Harris's low-back pain had developed as a result of her altered gait and authorized treatment of same.[2]

Thereafter, Harris entered a weight-loss program, and the appellee eventually approved her request for a total knee replacement. But before the surgery was performed, Harris sought a catastrophic designation of her claim on the basis of her knee and low-back pain and also requested that the appellee continue paying for the weight-loss program. The ALJ denied the request for a catastrophic designation, citing the appellee's approval of Harris's knee surgery, but ordered that the appellee continue paying for the weight-loss program "to insure a positive outcome of this surgery."

After undergoing the total knee replacement surgery in 2007, Harris continued to experience worsening low-back pain and sought treatment for same. In March 2010, Harris again sought a catastrophic designation of her claim and the continued payment for the weight-loss program. The ALJ denied both requests and, in doing so, also determined that any degeneration of Harris's back as a result of the knee injury had been resolved by the knee surgery and that the appellee was no longer responsible for Harris's low-back pain. The ALJ further determined that the continuing pain in Harris's back was attributable to her "morbid obesity" and that the back injury, thus, was not causally related to the knee injury.

Harris appealed the ALJ's decision to the Appellate Division, which vacated the ALJ's order and agreed with Harris's argument that the compensability of her back should not have been addressed when it was not an issue before the ALJ—the only issue being whether Harris's injuries warranted designation as catastrophic— and that Harris had not been given notice or an opportunity to be

---

[2] Specifically, the ALJ found that Harris "has developed low back pain from her antalgic gait resulting from her knee injury. I find the employee is in need of medical treatment for her low back pain. [The treating physician] is hereby authorized to provide treatment he deems necessary for the employee's low back pain." We also note that in a 2005 deposition, the claims adjuster for Harris's case described both the knee injury and low-back pain as compensable.

heard.[3] Accordingly, the Appellate Division instructed the ALJ

> in determining whether or not the Employee's claim should be designated CAT, to make her findings and conclusions consistent with our findings and conclusions herein that the Employee's back condition was not an issue properly before the administrative law judge at this time . . . .

Approximately four months later, without conducting a hearing or receiving any additional evidence, the ALJ issued a new order in which she again denied Harris's request for a catastrophic designation. In doing so, she yet again determined that Harris's "morbid obesity remains the primary cause of her back pain, not her left knee injury"; any worsening of Harris's spine was more likely "attributable to degeneration and aggravation of her spine due to her excessive weight since [she] has not worked since 2002"; and the "back pain from which she currently suffers bears no causal connection to her left knee injury nor to any aggravation caused by limping on her left leg."

Harris appealed this decision to the Appellate Division on the same grounds as before—namely, that the ALJ made a determination as to the compensability of her low-back pain when that issue was not properly before the ALJ. But this time, the Appellate Division adopted the ALJ's award. Harris then appealed the decision in superior court, and the order of the Appellate Division was affirmed as a matter of law when the superior court did not issue an order.[4] We granted Harris's application for a discretionary appeal, which follows.

1. Harris first argues that the ALJ erred as a matter of law in determining that the low-back pain is unrelated to the work injury because Harris did not have notice or an opportunity to be heard on that issue. We agree.

As we have previously held, "in order for an issue to be determined at a hearing, a party must either have notice and an opportunity to be heard on the issue *or* have given express or implied consent for the issue to be heard."[5] And here, we find neither.

At the relevant hearing, the ALJ characterized the issue before her as concerning a request for catastrophic designation and continued payment for a weight-loss program. The ALJ also noted that the

---

[3] The Appellate Division also determined that the ALJ made an erroneous finding of fact based on testimony as to Harris's right knee when the left knee was the relevant knee.

[4] *See* OCGA § 34-9-105 (b) (decisions of the board affirmed as a matter of law when superior court does not enter an order dispositive of the issues on appeal).

[5] *Home Depot v. Pettigrew*, 298 Ga. App. 501, 503 (1) (680 SE2d 450) (2009).

appellee contended that Harris was capable of performing light work and, thus, was not catastrophically injured. In this regard, Harris testified as to the history of her knee pain and low-back pain. She also detailed the physical restraints she was under and presented the testimony of a vocational expert who opined that Harris could not work due to her physical limitations and the type of employment available in the national economy.

In response, the appellee presented no testimony at the hearing, but both parties submitted medical records as to Harris's knee and back treatments. And the appellee's post-hearing brief contended that Harris's claim for a catastrophic designation should be denied based upon her medical history and an independent medical evaluation. Specifically, the appellee argued that because Harris's testimony as to worsening low-back pain was inconsistent with medical records, Harris's testimony was suspect. Thus, it is clear from the record that the issue before the ALJ was whether Harris's "injuries were sufficiently severe to merit catastrophic designation, not whether those injuries were compensable in the first place."[6] Indeed, neither Harris's testimony nor anything else in the hearing transcript suggests that the parties or the ALJ believed compensability was an issue.[7]

On appeal, the appellee focuses its argument on the evidence supporting the ALJ's denial of a catastrophic designation, "regardless of the overall compensability of Harris's low back pain." Indeed, the appellee "has pointed to no evidence that the parties or the ALJ ever mentioned [the compensability of the low-back pain] or any amendment to the WC-14 form at the hearing,"[8] and we, therefore, cannot conclude that Harris implicitly consented to a trial on the issue of compensability of the low-back pain.[9] Additionally, implied consent does not arise "if the parties do not squarely recognize the new issue as an issue in the trial."[10]

Accordingly, having reviewed the record, we agree with Harris that the ALJ erred by again making a determination as to the compensability of her low-back pain when that issue was not before the ALJ (and when the ALJ had been instructed by the Appellate Division to refrain from making a determination as to that issue on remand). And because there is no evidence that Harris "had notice

---

[6] *Id.* at 504 (1).

[7] *See id.*

[8] *Holliday v. Jacky Jones Lincoln-Mercury*, 251 Ga. App. 493, 496 (1) (554 SE2d 286) (2001).

[9] *See id.*

[10] *Pettigrew*, 298 Ga. App. at 504 (1).

and an opportunity to be heard on the issue of compensability, or gave implied consent to trial of that issue, the ALJ erred as a matter of law in making factual findings on that issue."[11] On remand, the ALJ must make a determination as to whether Harris's claim meets the criteria of a catastrophic injury as set forth in OCGA § 34-9-200.1 (g) (6) (A) without addressing the issue of compensability of Harris's low-back pain—which, we note, the ALJ previously determined *was* compensable.[12]

2. Because we vacate the ALJ's order and remand for the reasons set forth in Division 1, we need not address Harris's second enumeration of error.

Accordingly, for all the foregoing reasons, we vacate the ALJ's order and remand for a new determination of whether Harris is entitled to catastrophic designation without addressing the compensability of the low-back pain.

*Judgment vacated and case remanded. Ellington, C. J., and Phipps, P. J., concur.*

DECIDED APRIL 16, 2012.

*Lauren L. Benedict,* for appellant.
*Chambless, Higdon, Richardson, Katz & Griggs, Larry W. Fouche,* for appellee.

---

[11] *Id.; see also Cypress Ins. Co. v. Duncan,* 281 Ga. App. 469, 472-73 (4) (636 SE2d 159) (2006) (reversing award when party "was not afforded notice or an opportunity to be heard on the issue of permanent partial disability benefits"); *Holliday,* 251 Ga. App. at 496 (1) (affirming the reversal of award when ALJ addressed issue that was neither expressly or implicitly consented to for determination).

[12] *See Asplundh Tree Expert Co. v. Gibson,* 204 Ga. App. 853, 854 (1) (420 SE2d 797) (1992) (holding that OCGA § 34-9-103 (b) does not authorize the issuer of an award "to ignore the res judicata effect of its prior award, so as to readdress and redetermine the issue of compensability based upon a new hearing and consideration of new evidence").